Milton Alpert, J.
Claimant is a distributor of bottled water. In June of 1967, the claimant contracted with the State of New York, acting through the Saratoga Springs Commission, to purchase from the commission fixed quantities of bottled mineral waters from the springs in Saratoga. The agreement was for a 10-year period. The commission was then part of the Department of Conservation. Its functions were transferred in 1970 to the Office of Parks and Recreation in the Executive Department of the State (Executive Law, §§ 709 and 710).
The commission operated the Saratoga Bottling Plant at the State Park in Saratoga Springs, New York. There the mineral waters which came from springs in the park were bottled by State employees at the plant and the bottled products were delivered to claimant for distribution and sale in accordance with the agreement between the parties.
In 1971, by reason of action by the Legislature and the Director of the Budget, the contract between claimant and the State was terminated and the bottling plant was closed. Alleging a breach of contract, claimant has timely filed the instant claim seeking damages for the alleged breach.
*114 At the trial of this claim, it was agreed among the parties and the court that the question of the State’s liability should first be tried and that in the event the court found liability, the trial would be continued for the purpose of hearing proof concerning claimant’s damages.
The contract between claimant and the commission contained the following paragraph: "20. This agreement shall be binding upon the State of New York only insofar as the Commission has authority to contract and funds are appropriated or available therefor and shall in no event be regarded as an individual obligation of the members of the Commission, its directors, officers, agents or assigns.”
This clause was substantially similar to those contained in three previous contracts between the parties dated August 28, 1952, paragraph 10, August 1, 1957, paragraph 9, and July 26, 1962, paragraph 9.
The contract of June, 1967 was continued in existence until May 13, 1971, on which date the State Office of Parks and Recreation canceled the same for the stated reason that the Legislature had not appropriated or made available funds to the commission for the purpose of continuing the operation of the bottling plant. The background for such termination is as follows:
The Office of Parks and Recreation made a budget request for the 1971-72 State fiscal year which included items for personal service, maintenance and operation of the bottling plant. Such request was considered by the Budget Director who made recommendations to the Governor for inclusion in the Governor’s executive budget. It is the court’s understanding, based on State’s Exhibit F, that the Governor included a total of proposed appropriations of $277,000 for personal service, maintenance and operation of the bottling plant. Because of the then stringent financial situation of the State, the Legislature, as explained in State’s Exhibits F, G and H, eliminated such sum from its lump sum appropriation for the Office, of Parks and Recreation. The specific references in Exhibit F being "Close the Bottling Plant (Saratoga) reduction $277,000”; in Exhibit G being "The Saratoga Bottling Plant should be operated by private industry”; and in Exhibit H being "The bottling plant will be transferred to private operation.” Such was the intention of the Legislature in the State’s 1971-1972 Budget as enacted by chapter 50 of the Laws of 1971. The appropriations for the Office of Parks and Recrea *115 tion were contained in a lump sum appropriation and, therefore, section 49 of the State Finance Law was brought into operation. That section provides, in effect, that when lump sum appropriations are made for personal service, maintenance and operation no moneys shall be available for payments therefor until a schedule of positions and salaries and the amounts to be available for other personal service classes of expenditure and for the expenses of maintenance and operation shall have been approved by the Director of the Budget, and a certificate of such approval filed with the chairmen of the fiscal committees of the Legislature and with the State Comptroller. Accordingly, the Budget Director issued his certificate which authorized the continuation of many positions in the Office of Parks and Recreation but which specifically struck out, for abolition effective May 13, 1971, positions related to the bottling plant, as well as other operations to be discontinued.
As the result of claimant’s receipt of the letter of termination previously referred to, dated May 4, 1971, claimant offered to pay additional sums for the purpose of defraying the costs of bottling. In Exhibit 4 claimant offered to pay 50 cents per case with a guarantee of 150,000 cases for the cost of buying bottles and paying for bottling. The court translates this into an offer of $75,000 a year for the purpose of defraying the costs of bottles and bottling.
A basic question in this litigation concerns language in the executory clause of the contract as to the meaning of the words "funds appropriated or available for performance of the contract by the State.” (See Amarnick v State of New York, 41 AD2d 976.) In early correspondence between the claimant and the commission, claimant was informed that his request for a contract for a period of 10 years could not "be guaranteed because required funds for operation must be made available by the Governor and the Legislature each fiscal year. Income from the Bottling Plant must be deposited in a State fund and cannot be used for operation.”
Thus, claimant was made aware of fiscal procedures which the commission had to follow with respect to having to obtain legislative appropriations from year to year to support the bottling operation. This clearly was explanatory background related to the above-described "executory” paragraphs in the four contracts between the commission and claimant, and more particularly in the last contract made in 1967.
*116 Claimant argues that since there was a lump sum appropriation, an allocation should have been made therefrom to support the bottling operations provided for in his contract and also that his offer of $75,000 per year in effect made funds "available” to support such operations and that for these reasons, the contract should have been continued in effect.
For the purposes of the court’s decision the important facts are:
(a) The executory clause in section 20 of the contract,
(b) The legislative intent in chapter 50 of the Laws of 1971 with respect to appropriations for personal service, maintenance and operation of the bottling plant,
(c) The Budget Director’s certificate of approval under section 49 of the State Finance Law to the Office of Parks and Recreation for the fiscal year 1971-72 which, from the Legislature’s lump sum appropriation, made allocations to specified personal service, maintenance and operation items, but which struck out specific items which theretofore had provided for personal service for the bottling plant; and,
(d) The offer of claimant to pay 50 cents per case for a guaranteed 150,000 cases per year — or $75,000 per year— which was not accepted by the State.
In its analysis of the background surrounding the adoption of the State Budget for 1971-72 fiscal year, the court finds that there was a clear legislative intention not to include in its lump sum appropriation in chapter 50 of the Laws of 1971, an amount for the support of the bottling plant for such fiscal year (Williams v Williams, 23 NY2d 592; McKinney’s Cons Laws of NY, Book 1, Statutes, § 125). Furthermore, since the budget was in a lump sum, there was no allocation by way of a Budget Director’s certificate of approval under section 49 of the State Finance Law* for personal service, maintenance and operation items to support the bottling plant operation for such fiscal year. Rather, in the Budget Director’s certificate of approval issued pursuant to section 49 there are clear and specific indications of an opposite intention — namely, to abolish the personal service items on May 13, 1971. The court finds that under the executory clause of the contract moneys were not "appropriated or available” for personal service, maintenance, operation and other expenses in connection with the plant and its production of bottled waters. The court finds *117 that the words "appropriated or available” are used in a State budgetary procedure sense and relate to appropriation by the Legislature or made available by appropriation including allocation by the Director of the Budget (Starling Realty Corp. v State of New York, 286 N Y 272, 277-278). Cases such as Drislane v State of New York (7 AD2d 141) and Adson Ind. v State of New York (28 AD2d 1183) are not applicable here. In Drislane funds were available whereas in the instant situation they were not as the lump-sum appropriation clearly was not intended to provide for the operation of the bottling plant and furthermore there was no allocation therefor by way of a certificate of approval issued by the Director of the Budget. In Adson, again funds were available to pay rent but the State agency involved desired to expend them for quarters at another location.
In view of the above analysis, the court finds that the Office of Parks and Recreation and the Director of the Budget could not and should not have made a portion of the lump sum appropriation to the office available for continued operation of the bottling plant.
With respect to claimant’s offer of 50 cents per case for a guaranteed 150,000 cases — which the court translates to $75,-000 per year for bottles and bottling costs, the court finds that the sum offered was insufficient to support such operations in that it was just above the amount required for personal services only and did not include other necessary items such as the cost of fringe benefits for the employees, bottles, repairs or other maintenance and operation expenses of the plant. In this connection, the court understands that the Governor’s executive budget request for personal service, maintenance and operation of the bottling plant for the fiscal year 1971-72 amounted to $277,000. Accordingly, claimant’s offer of $75,000 was grossly inadequate. Furthermore, if the court were to consider the $75,000 as an offer of a gift, it was not advanced in an unconditional manner and could not have been accepted under section 11 of the State Finance Law. In any event, the proffered gift was not accepted. For the reasons that claimant’s $75,000 offer was inadequate and was not accepted, the court rejects claimant’s argument that his offer should be held to have been sufficient under the executory clause to satisfy the term "available” therein.
In view of the above, the motion of the defendant made at the end of the claimant’s case and renewed following presen *118 tation of the defendant’s case to dismiss the claim for failure to prove a cause of action is granted and the claim is dismissed on the merits.
All other motions, decision on which was reserved and which are not disposed of by the contents of this decision, are denied.

 Section 49 was in effect when the instant contract was entered into.