Hon. James A. Prevost Commissioner Office of Mental Health
This is in response to the request made by your counsel, Michael J. Volpe, regarding a proposed financing arrangement for the acquisition of telephone equipment by various psychiatric centers run by the Office of Mental Health.* Under Mental Hygiene Law § 7.11, the Commissioner of Mental Health may assign certain functions to such facilities which impliedly include the power to purchase by contract. Exercise of such authority, of course, is subject to authorization of the Commissioner of General Services under State Finance Law § 161.
You state that purchase of private systems for these facilities would realize substantial savings for the State. However, sufficient capital funds are not available to make outright purchases, so one possibility is to finance by means of installment sales agreement. In that way, the installment payments would come within the facilities' current operating budget for telephone service.
Specifically, you ask whether an installment sales agreement is a permissible means for financing a State contract for telephone equipment.
The purchase award itself would be based upon competitive bidding in accordance with the provisions of State Finance Law § 174. Under the installment sales agreement entered into after the award, title to the equipment would pass initially to the State. The State facility would be obligated to make payments over the term of the agreement to cover the purchase price and financing charges. If the State facility failed to make any such payment when due, title would revert to the seller. Upon final payment, however, the State's obligation would be discharged and any interest of the seller would be extinguished. The terms of the Uniform Commercial Code would apply to the transaction unless provided otherwise in the agreement or by State statute.
Financing by installment sales agreements is obviously a departure from traditional forms of State purchasing. However, modern marketing techniques deserve consideration especially where they afford savings to the State as a purchaser instead of as a lessee.
It is anticipated that the money appropriated and available for such equipment in any given year would be sufficient only to cover the installment payments falling due in such year. A primary concern is whether this form of financing a purchase is consonant with statutory requirements. Section 41 of the State Finance Law provides that "no state officer, employee, board, department or commission shall contract indebtedness on behalf of the state, nor assume to bind the state in an amount in excess of moneys appropriated or otherwise lawfully available". The question then becomes whether the State's obligation under the proposed installment sales agreement will constitute indebtedness in excess of moneys appropriated or otherwise available.
You have stated that the agreement will include an executory clause. This executory clause reads to the effect that the contract shall be deemed executory to the extent money is available and no liability shall be incurred by the State beyond the money available. This type of clause has been recognized as preventing the State from being liable for lease cancellation. Starling Realty Corp. v State, 286 N.Y. 272 (1941). It has been applied to relieve the State from liability for cancelling a multi-year contract for sale of mineral water. A. Irving Amarnick vState, 84 Misc.2d 112 (Ct Cl, 1975), affd 52 A.D.2d 1007.
All contracts made for or by any State department, board, officer, commission or institution must be in writing and contain an executory clause (see 2 NYCRR 7.2 [b]).
In our opinion, the inclusion of an effective executory clause in the installment sales agreement will condition the State's obligation so that it will be in compliance with State Finance Law, § 41. The State's liability for future years' installment payments will exist only to the extent moneys are annually appropriated and available to pay such installments.
In the past this office has recognized situations where contracts may be made in excess of moneys appropriated because, with the inclusion of an executory clause, such contracts are only binding to the extent of the moneys available. 1923 Op Atty Gen 204, 1944 Op Atty Gen 159.
Furthermore, the Constitution provides that no money shall be paid out of the State Treasury or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law. N Y Const, Art VII, § 7. Thus, payment of future years' installments, if made, would necessarily have to be from future years' appropriations.
In passing we note the provision in the Constitution prohibiting contracting of "debt" by or in behalf of the State unless authorized by law and approved by the people at a general election. N Y Const, ArtVII, § 11. In our opinion, the qualified obligation undertaken by the State in such installment sales agreements would not constitute "debt" within the meaning of this constitutional provision. In Wein v Levitt,42 N.Y.2d 300, 304 (1977), the Court of Appeals made the following distinction:
 "In any analysis of State spending at least two classifications of debt must be envisioned and categorized. For example, a purchase order for office supplies, future salary obligations, travel expenses or obligations arising out of the State's waiver of immunity under section 8 of the Court of Claims Act create debts. These debts are paid out of current appropriations in the State's general fund replenished by the collection of taxes. Not even plaintiff argues that such debts contingent or fixed, necessary for the ongoing business of State government are subject to section 11 of Article VII of the State Constitution.
 "Then there are debts created by long-term borrowing and bond obligations. Such propositions are regularly submitted to referenda. These are examples of the debts with which section 11 is concerned * * *".
Certainly the inclusion of the executory clause in these installment sales agreements would be in sharp contrast to long-term State borrowing by notes and bonds, which by their very nature could not contain executory clauses.
As indicated above, the inclusion of an effective executory clause in the installment sales agreement satisfies the requirements of the State Finance Law. The wording of the clause itself is important to assure that it will be operative if a situation calling for its use arises.
We have reviewed the form of executory clause proposed by the Office of General Services for inclusion in installment sales agreements and find it generally satisfactory:
 "This contract shall be deemed executory only to the extent of monies appropriated and available for the purpose of the contract, and no liability on account thereof shall be incurred by a purchaser beyond the amount of such monies. It is understood that neither this contract nor any representation by any public employee or officer creates any legal or moral obligation to request, appropriate, or make available monies for the purpose of the contract."
The question of availability of funds for the installments falling due in any given year is a question of fact to be resolved under the circumstances then presented (A. Irving Amarnick v State, 41 A.D.2d 976
[3d Dept, 1973]). Certainly as long as funds are appropriated and available the agency should continue to honor its obligations under the agreement.
It is anticipated that there may be aspects of third-party financing involved in such installment sales. There is nothing to prevent the vendors, when submitting bids for supplying equipment to use prices based on financing arrangements they have made with third parties, or to prevent the successful bidder from assigning its rights to receive installment payments to a third party subject to the approval of the State and the inclusion of proper safeguards in the sales agreement and assignment.
* For private ownership of telephone equipment see47 C.F.R. Part 68;North Carolina Utilities Comm. v F.C.C., 552 F.2d 1036 (4th Cir, 1977), cert den 434 U.S. 874 (1977).