Gabrielli, J.
In this declaratory judgment action, the plaintiff raises a direct constitutional challenge to the legislative enactment regarding State borrowing, and seeks a declaration *303 that a "save harmless” provision providing for indemnification of State investment officials, is illegal.
By chapter 893 of the Laws of 1975 (Workmen’s Compensation Law, § 87-c) the Legislature directed that the State Insurance Fund invest in obligations of public benefit corporations known as "buildout authorities” (Housing Finance Agency, Medical Care Facilities Finance Agency, Dormitory Authority and Environmental Facilities Corporation). Section 87-c (subd 5, par a), which provides that the State Insurance Fund and the State shall, "save harmless and indemnify each and every state officer with responsibility for the custody or investment of such fund”. Plaintiff brought this action on the single allegation that this indemnity provision is violative of the provisions of section 11 of article VII of the New York State Constitution which prohibits the State from contracting a debt unless the debt shall be authorized for some single work or purpose by the people at a general election.
The Justice at Special Term, dealing with plaintiff’s sole allegation, found the indemnity provision valid and granted defendant’s cross motion for summary relief and a declaratory judgment. Plaintiff appeals directly to this court pursuant to the provisions of CPLR 5601 (subd [b], par 2).
The Legislature’s direction and mandate to the managers of the State Insurance Fund to make the prescribed investments arose out of a special session, called to deal with the financial emergency then existing. During the regular session in 1976, the Legislature passed chapter 115 which explained that the traditional markets for bonds and notes of certain public benefit corporations had dried up and the agencies were being denied access to the capital markets, threatening these corporations with default on their outstanding obligations; and that such threat required the enactment of chapter 893 at the previous special session to restore those agencies to financial health and "to ameliorate the disastrous consequences, to taxpayers, to holders of agency obligations and to residents of the state, of an inability by these agencies to meet their obligations”.
With perhaps an excess of caution, the drafters of section 87-c provided not only for indemnity in subdivision 5, but also for immunity in subdivisions 3 and 4. In subdivision 3 there is a legislative declaration that "any and all obligations” of the buildout authorities "are reasonable, prudent, proper and legal investments for the state insurance fund and for all *304 state officers with responsibility for the custody or investment of such fund or of its assets”; and subdivision 4 provides that no officer shall incur any liability by reason of such investment. While it is true that a State officer with State immunity perhaps might not be immune in an action properly brought in Federal court (Scheuer v Rhodes, 416 US 232), thus warranting a further indemnity provision as enacted in subdivision 5, the prospect of such a recovery is a remote possibility at best, especially in view of the legislative declaration that any and all purchases are prudent and proper.
These layers of protection, excluding the indemnity provision, illustrate the very heavy odds against anyone ever having to be indemnified under the provision complained of by plaintiff. He has not disclosed any instance where a lawsuit is even contemplated against managers of the State Insurance Fund for section 87-c purchases, much less an instance where any "debt” has actually accrued by reason of the entry of a judgment. Upon the authority of Salzman v Impellitteri (305 NY 414, 420) it is urged that there is a question of reviewability. Given the public importance of the issue raised, we address the merits and, in doing so, we affirm the holding of Special Term.
In any analysis of State spending at least two classifications of debt must be envisioned and categorized. For example, a purchase order for office supplies, future salary obligations, travel expenses or obligations arising out of the State’s waiver of immunity under section 8 of the Court of Claims Act create debts. These debts are paid out of current appropriations in the State’s general fund replenished by the collection of taxes. Not even plaintiff argues that such debts, contingent or fixed, necessary for the ongoing business of State government are subject to section 11 of article VII of the State Constitution.
Then there are debts created by long-term borrowing and bond obligations. Such propositions are regularly submitted to referenda. These are examples of the debts with which section 11 is concerned. This is made clear from the history underlying article VII as very recently explained by the court in Wein v State of New York (39 NY2d 136, 142-144). It is not necessary again to recapitulate that history except to note that the danger sought to be met by constitutional restrictions was the over-burdening of future generations by the incurring of long-term debt for capital improvements. The danger was first recognized by the practice of subsidizing canal and railroad *305 construction only to have the transportation companies unable later to pay their debts. Consequently, the State took the loss and this prompted the safeguards incorporated in article VII (p 143).
Plaintiff argues, apparently, that a statutory obligation to indemnify State officers and employees for losses sustained as the result of liability arising out of their employment activities amounts to the second kind of debt mentioned. The main components or ingredients for such a debt, however, are lacking. There is simply no borrowing for a long term which will burden future generations. There is, in fact, no indication that there would be any borrowing at all, or that there ever has been any borrowing for purposes of fulfilling indemnity statutes already on the books.[1] There is nothing in anything plaintiff claims and argues, or in our own research, that indicates that indemnity payments would not be a contingent cost of doing State business payable routinely out of the general fund, should the obligation arise. Consequently there is simply no basis whatsoever for the assertion that this indemnification is a debt within the meaning of article VII.
Although the dissent acknowledges that "the indemnification provision is not, by itself, a creation of debt by the State” (p 309), it is argued that indemnification of these officers for financial loss arising out of any claim for alleged negligence or breach of fiduciary duty by reason of investment in the enumerated public benefit corporations constitutes a loan of the State’s credit to the public corporations. Section 8 of article VII of the Constitution prohibits, inter alia, a loan of the State’s credit to any public corporation. The issue addressed by the dissent is whether the indemnification provision creates, in effect, a loan of the State’s credit to the public corporations involved.
Simply stated, and as succinctly alleged in paragraph "3” of his complaint, plaintiff raises only section 11 of article VII of the Constitution,[2] and he then adds that the Legislature, by its *306 action has created an illegal debt of the State. This case comes to us in the nature of a motion for summary judgment and, as such, we may address only the issues articulated by the pleadings and affidavits. The record controls (6 Carmody-Wait 2d, NY Prac, § 39.13) and in this case the papers are devoid of any constitutional challenge based upon section 8 of article VII. It is important that we not entertain or pass upon constitutional questions neither raised nor considered below (Schillawski v State of New York, 9 NY2d 235, 240; E. J. Eddy, Inc. v Fidelity & Deposit Co. of Md, 265 NY 276, 282; Cohen and Karger, Powers of the New York Court of Appeals, §§ 55, 169; 11 Carmody-Wait 2d, NY Prac, § 71.114; see, also, Telaro v Telaro, 25 NY2d 433, 439). However, in view of the dissenters’ sole reliance on section 8 of article VII we deem comment to be appropriate.
The section 8 prohibition against lending the State’s credit "was prompted largely by the extensive and highly speculative subsidizing in the first half of the nineteenth century of private railroad and canal companies by the State’s long-term debt obligations” (Wein v State of New York, 39 NY2d 136, 142- 143, supra). That provision seeks to prevent the State from loaning its credit to a public corporation with the concomitant possibility that the State might ultimately pay the corporation’s obligations (Wein v State of New York, supra, pp 143- 144). Subsidy by loan of credit was the evil sought to be eradicated. Indemnification of officials for breach of fiduciary duty is no such monster. The indemnification provision does not create an obligation, contingent or otherwise, running to the creditors of the public corporations but rather the obligation, if any arises, runs to those persons having an interest in the Insurance Fund. Indeed, if one of the public corporations falters, the indemnification does not automatically create a present debt. An obligation would arise only if investment in the public corporation is found, by a court, to be a breach of fiduciary duty but the Legislature has declared that such investments "are reasonable, prudent, proper and legal” (Workmen’s Compensation Law, § 87-a, subd 2). Indemnification of State officials is not even colorably a loan to a public corporation.
*307 The dissenters assume that because the State may incur an obligation to make good on any losses suffered by the fund as a result of default, a loan of credit to the public corporation has arisen. But it is the fund and its beneficiaries who gain by the State’s responsibilities. The fact that the State may make good losses to the fund, in the event of default, is small solace to the public benefit corporations or their creditors. If the public corporations default, they will wallow in their own tragedy, without the benefit of State credit vis-á-vis the indemnification provision. The fact that the measure of State liability to the fund or its officers may relate to the amount of default is not determinative. The measure of damages does not define the obligation and in this case the obligation is purely one of indemnification of State officials. The indemnification does not run afoul of section 8 of article VII.
The authorities presented by plaintiff which deal with the question of "debt”, including Levy v McClellan (196 NY 178) in its relevant context, involve borrowing or capital expenditures. The other authorities cited have no relevance to the narrow "debt” question set forth in his complaint and dealt with below.
The judgment of Special Term should be affirmed, without costs.

. (See, e.g., Public Officers Law, § 17; General Municipal Law, §§ 50-a, 50-b, 50-c, 50-j, 50-1; Education Law, § 6308; Mental Hygiene Law, § 81.08; County Law, § 533; Public Health Law, § 14-a; Civil Rights Law, § 79-f; Corrections Law, § 24-a; Court of Claims Act, § 8-a; Executive Law, §§ 257-a, 501-a; Military Law, § 235-a; Workmen’s Compensation Law, § 19-c.)

. Section 11 of article VII of the New York State Constitution provides that: "Except the debts specified in sections 9 and 10 of this article, no debt shall be hereafter contracted by or in behalf of the state, unless such debt shall be authorized by law, for some single work or purpose, to be distinctly specified therein. No such *306 law shall take effect until it shall, at a general election, have been submitted to the people, and have received a majority of all the votes cast for and against it at such election nor shall it be submitted to be voted on within three months after its passage nor at any general election when any other law or any bill shall be submitted to be voted for or against.”