Long Island Lighting Co. et al., Plaintiffs, v William L. Mack et al., Defendants.

Second Department, May 16, 1988

### APPEARANCES OF COUNSEL

*Shea & Gould (Ronald H. Alenstein* and *Maurice N. Ross* of counsel), and *Anthony F. Earley, Jr.,* for Long Island Lighting Company, plaintiff. (One brief filed.)

*Douglas Foster (Martin S. Kaufman* of counsel), for Herbert Jaffe, plaintiff.

*Skadden, Arps, Slate, Meagher & Flom (Jonathan J. Lerner, George A. Zimmerman* and *Seth M. Schwartz* of counsel), for defendants.

*Robert Abrams, Attorney-General (Ann Horowitz* of counsel), in his statutory capacity under Executive Law § 71.

### OPINION OF THE COURT

SPATT, J.

This is the latest in a series of cases involving the constitutionality of the Long Island Power Authority Act of 1986 (Public Authorities Law §§ 1020—1020-hh) which created the Long Island Power Authority (hereinafter LIPA) and authorized it, under certain circumstances, to acquire the Long Island Lighting Company (hereinafter LILCO) through either the purchase of its stock or the exercise of the power of eminent domain.

In 1987, Public Authorities Law § 1020-bb was enacted which provides that the trustees and officers of LIPA will not be subject to any personal or civil liability and will be indemnified for claims resulting from the exercise of their powers unless their conduct is determined to constitute "intentional wrongdoing". In this case, we are asked to decide whether these exculpation and indemnification provisions violate either the New York State or United States Constitutions.

We hold that the provisions of Public Authorities Law § 1020-bb providing for the immunity, defense and indemnifi-

cation of the trustees and officers of LIPA from personal or civil liability resulting from carrying out the Authority's purposes do not violate NY Constitution, article VII, § 8 (1) proscribing the giving or lending of the credit of the State in aid of a public corporation. We further determine that there is no irreconcilable conflict between the aforesaid provisions of the Public Authorities Law and the Federal Securities Acts of 1933 and 1934. Consequently, pursuant to the well-established principles controlling the application of the Supremacy Clause of the US Constitution, the provisions of the Federal Securities Acts relied on by the plaintiffs do not undermine the validity of the challenged statute.

## BACKGROUND

This is a submission of a controversy directly to the Appellate Division, Second Department, pursuant to CPLR 3222 on stipulated facts to determine whether Public Authorities Law § 1020-bb violates the NY Constitution article VII, § 8 (1) and/ or the US Constitution, article VI, clause 2, the Supremacy Clause. This case presents solely issues of constitutional law and no factual issues.

The plaintiff LILCO is a public service corporation engaged in the production, distribution and sale of electricity and natural gas in the Counties of Nassau and Suffolk and the Rockaway Peninsula in Queens County. The plaintiff Herbert Jaffe is a citizen of the State of New York and a resident of Freeport in Nassau County. The plaintiffs bring this action in their capacity as taxpayers of the State of New York.

This controversy arises as a result of the enactment on July 24, 1986, of title 1-A of the Public Authorities Law which created LIPA (L 1986, ch 517, § 1). The Legislature expressly determined that the operation of LIPA is primarily "for the benefit of the people of the state of New York, for the improvement of their health, welfare and prosperity, and is a public purpose, and the authority shall be regarded as performing an essential governmental function" (Public Authorities Law § 1020-p [1]). LIPA was created because the Legislature specifically found that there was an emergency involving the "economic well-being, health and safety of the * * * [LILCO] service area" (Public Authorities Law § 1020-a) resulting from, among other things, the "[c]onstantly escalating and excessive costs of electricity" provided by LILCO and the "lack of confidence that the needs of the residents and of commerce and industry * * * for electricity can be supplied in a reliable,

efficient and economic manner by [LILCO]" (Public Authorities Law § 1020-a). LIPA's purpose is to eventually acquire LILCO through either the purchase of its stock or the exercise of the power of eminent domain (Public Authorities Law § 1020-h). LILCO would then be transformed from an investor-owned utility to a publicly owned power authority (Public Authorities Law § 1020-a). In creating LIPA, the Legislature declared it to be a "body corporate and politic and a political subdivision of the state, exercising essential governmental and public powers" (Public Authorities Law § 1020-c [1]). Presently, LIPA consists of nine appointed trustees who will serve until December 31, 1991, when they will be replaced by elected officials (Public Authorities Law § 1020-d [1]). Only the chairperson of LIPA receives a salary; the other eight trustees are entitled only to "reimbursement for reasonable expenses in the performance of duties assigned" (Public Authorities Law § 1020-d [6]).

On July 22, 1987, the Legislature added section 1020-bb to the Public Authorities Law (L 1987, ch 334, § 1). Public Authorities Law § 1020-bb, entitled "Exculpation", provides in subdivision (1) thereof that the trustees and officers of LIPA will not be subject to any personal or civil liability resulting from the exercise of their powers unless their conduct is determined to constitute "intentional wrongdoing". Public Authorities Law § 1020-bb (2) provides that the indemnification provisions of Public Officers Law § 17 shall apply to trustees and officers of LIPA. Public Officers Law § 17 (3) (a) provides for indemnification of State officials, employees and others and for defense of such persons in civil actions or proceedings arising from any alleged act or omission which occurred while the person "was acting within the scope of his public employment or duties," except where "the injury or damage resulted from intentional wrongdoing". Also, Public Officers Law § 17 provides that the Attorney-General of the State of New York shall be responsible for providing legal representation or a legal defense for such persons.

Public Authorities Law § 1020-bb (3) provides that whenever the provisions of Public Officers Law § 17 do not apply, the provisions of section 18 thereof will be applicable. Public Officers Law § 18 permits a "public entity" such as LIPA to adopt a bylaw or resolution conferring upon its employees the right to defense and indemnity in any civil action or proceeding, State or Federal, arising out of any alleged act or omission which occurred "while the employee was acting within

the scope of his public employment or duties" (Public Officers Law § 18 [4] [a]). However, Public Officers Law § 18 (4) (b) does not permit a public entity to provide indemnity "where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee". Under section 18, unlike section 17, the "public entity" (in this case LIPA), and not the State, is responsible for paying the cost of defense and indemnity. It is significant that neither section provides for indemnification or defense in cases of "intentional wrongdoing".

Finally, subdivision (4) of Public Authorities Law § 1020-bb provides that any costs incurred by the State in accordance with Public Authorities Law § 1020-bb (2) "shall be treated as advances by the state to the authority" which will eventually be repaid to the State without interest by LIPA, "at such times and on such conditions as the state and the authority mutually may agree upon".

A summary of all the provisions of Public Authorities Law § 1020-bb reveals the following: (1) the trustees and officers are immune from personal or civil liability from their acts in carrying out LIPA's purposes, except for acts of "intentional wrongdoing", (2) the only payments by the State or LIPA in this connection are for the expenses of defense with regard to their conduct not involving "intentional wrongdoing", (3) initially, their defense shall be conducted by the Attorney-General and any costs of defense will be advanced by the State, (4) when LIPA is in a financial position to do so, it shall itself pay for the cost of defending its trustees and officers for acts other than "intentional wrongdoing", (5) there is no immunity nor indemnity nor the right to a defense as to any acts which constitute "intentional wrongdoing", and (6) any "advances" made by the State shall be repaid by LIPA.

The legislative memorandum which accompanied the passage of Public Authorities Law § 1020-bb reflects the concern and reasoning of the Legislature that: "[w]ithout indemnification protection, it may be extremely difficult to retain trustees who would be willing to serve given that one lawsuit has already been served on the trustees by LILCO, and that others could follow" (mem in support of L 1987, ch 334, § 1 [July 28, 1987], at 2).

Given the lack of financial remuneration to the trustees for their service, the legislative purpose in enacting Public Authorities Law § 1020-bb is consistent with similar treatment of

other public corporations and authorities. Without immunity and indemnification, it is reasonable to assume that it would be difficult to obtain the services of the required competent and civic-minded trustees.

With regard to their New York State constitutional challenge, the plaintiffs allege that subdivisions (2) and (4) of Public Authorities Law § 1020-bb violate NY Constitution, article VII, § 8 (1), because they provide for a "gift or loan of state credit" in aid of private individuals and a public corporation. The plaintiffs further claim that subdivisions (1), (2), and (3) of Public Authorities Law § 1020-bb seek to immunize and indemnify the trustees and officers of LIPA in violation of Federal law. Specifically, the plaintiffs charge that the indemnification provisions of subdivisions (2) and (3) violate the terms of the Securities Act of 1933 (15 USC § 77a, *et seq.*) (hereinafter the 1933 Act) and the Securities Exchange Act of 1934 (15 USC § 78a, *et seq.*) (hereinafter the 1934 Act).

■ In challenging the constitutionality of Public Authorities Law § 1020-bb, the plaintiffs face a heavy burden since statutes are presumed to be constitutional, and that presumption can only be rebutted by proof of unconstitutionality beyond a reasonable doubt *(see, Maresca v Cuomo,* 64 NY2d 242, 250; *Hotel Dorset Co. v Trust For Cultural Resources,* 46 NY2d 358, 370; *Montgomery v Daniels,* 38 NY2d 41, 54). There is also a presumption that the "Legislature has investigated and found facts necessary to support the legislation * * * as well as the existence of a situation showing or indicating its need or desirability" *(Hotel Dorset Co. v Trust For Cultural Resources, supra,* at 370; *see also, Matter of Taylor v Sise,* 33 NY2d 357, 364; *Matter of Van Berkel v Power,* 16 NY2d 37, 40). In our view, the plaintiffs failed to meet this burden.

NEW YORK STATE CONSTITUTIONAL CHALLENGE

NY Constitution, article VII, § 8 (1) provides, in part, that the "credit of the state" shall not be "given or loaned to or in aid of any individual, or public or private corporation". The plaintiffs' argument is premised on the theory that funds advanced pursuant to subdivisions (2) and (4) of Public Authorities Law § 1020-bb, for the purpose of indemnifying the trustees and officers of LIPA constitute a gift or loan of the State's credit to LIPA.

The prohibition against extending the State's credit is designed to prevent the State from acting as a surety or a guarantor of the debt of others *(see, Wein v State of New York,*

39 NY2d 136, 145). "It is undisputed that the State may give or lend money, as distinguished from its credit, to assist a municipal or other public corporation in a public purpose" so long as the assistance is "made pursuant to an appropriation, which must distinctly specify the sum appropriated and the object or purpose to which it is to be applied" *(Wein v State of New York, supra,* at 145, 146).

As stated above, the Legislature has determined that indemnification statutes are necessary in order to attract worthy persons to serve as public officials, especially when such civic-minded individuals serve without compensation. We note that a number of New York statutes presently afford similar protection to directors and officers of other public corporations, such as the State Insurance Fund (Workers' Compensation Law § 87-a [3]); the New York Convention Center Operating Corporation (Public Authorities Law §§ 2560, 2562, 2571); the New York State Urban Development Corporation (McKinney's Uncons Laws of NY §§ 6254, 6254 [3-a] [New York State Urban Development Corporation Act §§ 4, 4 (3-a); L 1968, ch 174, § 1, as amended]; L 1983, ch 56, § 13, as amended, set forth following McKinney's Uncons Laws of NY, § 6267, 1988 Pocket Part, at 114, 119); the Olympic Regional Development Authority (Public Authorities Law §§ 2606, 2608 [1], [2]; § 2623); the New York State Energy Research and Development Authority (Public Officers Law § 17 [1] [b]); the New York State Science and Technology Foundation (Public Officers Law § 17 [1] [b]); the Environmental Facilities Corporation (Public Officers Law § 17 [1] [e]); the New York State Project Finance Agency (McKinney's Uncons Laws of NY §§ 6364, 6364 [10]; § 6366 [New York State Project Finance Agency Act §§ 4, 4 (10); § 6; L 1975, ch 7, § 2, as amended]); the Roosevelt Island Operating Corporation (McKinney's Uncons Laws of NY §§ 6387, 6392 [L 1984, ch 899, §§ 3, 8]); and the Municipal Assistance Corporations (Public Authorities Law §§ 3010, 3020).

The Legislature annually appropriates funds from which to pay the costs of indemnification pursuant to statutes such as Public Authorities Law § 1020-bb. In fiscal 1986-1987, the sum appropriated for LIPA was $4,000,000. This appropriation constitutes the source for any indemnification payments or advances to LIPA pursuant to Public Authorities Law § 1022-bb. The plaintiffs contend that because of the multiple, complex and costly litigation which has already arisen and which is likely to result in the future from any actions taken by the

LIPA trustees, the funds appropriated annually by the Legislature will not be sufficient to pay the costs of indemnification or to satisfy the advances needed under Public Authorities Law § 1022-bb (4). The plaintiffs theorize that the State will then be forced to engage in long-term borrowing in order to meet its obligations under Public Authorities Law § 1020-bb, thereby violating the State constitutional provision at issue. We disagree.

In *Wein v State of New York* (39 NY2d 136, *supra*), $750,000,000 in appropriations to the City of New York and the Municipal Assistance Corporation, which were to be funded by short-term State borrowing in the form of revenue or tax anticipation notes, were held not to constitute a gift or loan of the credit of the State to public corporations in violation of NY Constitution, article VII § 8 (1). In so holding, the Court of Appeals stated: "The concern expressed in the *Westchester Bank* case *[People v Westchester County Natl. Bank,* 231 NY 465], namely, that the State's credit would be impaired and posterity burdened by the improvident use of long-term borrowing to finance gifts of the State's money, is obviated by using constitutionally valid short-term borrowing to finance appropriations of money to assist municipal or other public corporations" *(Wein v State of New York, supra,* at 146).

In *Wein v Levitt* (42 NY2d 300), the Court of Appeals upheld as constitutionally valid that portion of the Workmen's (now Workers') Compensation Law which provided that the State shall indemnify its officers who cause the State Insurance Fund to invest in the obligations of public benefit corporations. The indemnification provision and the constitutional attack in *Wein v Levitt (supra),* were comparable to those presented in the instant case.

In *Wein v Levitt (supra),* the court held that the New York State constitutional provision at issue there and in this case was concerned with debts created by long-term borrowing and bond obligations and not with moneys for indemnification paid from the current appropriations in the State's general fund. Pertinent to the instant case, the Court of Appeals found that:

"There is simply no borrowing for a long term which will burden future generations. There is, in fact, no indication that there would be *any* borrowing at all, or that there ever has been any borrowing for purposes of fulfilling indemnity statutes already on the books. There is nothing in anything

plaintiff claims and argues, or in our own research, that indicates that indemnity payments would not be a contingent cost of doing State business payable routinely out of the general fund, should the obligation arise * * *

"Subsidy by loan of credit was the evil sought to be eradicated. Indemnification of officials for breach of fiduciary duty is no such monster" *(Wein v Levitt, supra,* at 305-306).

As in *Wein v Levitt (supra),* there is no indication in the instant case, beyond mere speculation, of any borrowing to satisfy indemnity payments. Furthermore, we note that the statute at issue in this case does not provide for indemnification for breach of fiduciary duty. Such acts are excluded from the immunity, indemnification and defense provisions of Public Authorities Law § 1020-bb.

In this case, Public Authorities Law § 1020-bb creates no State debt and does not require any borrowing by the State. On the contrary, as part of the State's annual budget, the Legislature appropriates a specific amount of tax-raised revenues, to be paid from the State's general fund, for payments of indemnity and defense costs in accordance with Public Officers Law § 17. These annual appropriations include the indemnity payments to the officers and trustees of LIPA; and in 1987-1988, the actual appropriation was $4,000,000. This sum was funded by tax revenues and not by long-term or short-term borrowing. As the Court of Appeals stated in *Wein v Levitt (supra),* these annual appropriations of tax-raised revenues for payments under indemnification statutes do not involve borrowing by the State and do not create a State debt. Moreover, if unconditional indemnification payments without provision for repayment to the State have been held to be constitutionally valid, it necessarily follows that the State can validly advance those payments and be reimbursed for them, as is provided in the LIPA Act. Therefore, there is no impermissible extension of State credit as envisioned by the NY Constitution, article VII.

▪ The plaintiffs' contention that indemnification clauses like the one in question have only been upheld when the officials subject to indemnification were involved in governmental functions, as opposed to proprietary activities, is also without merit. Initially, we question whether the acquisition and operation of the LILCO operation is a purely "proprietary" activity. The Legislature expressly determined that LIPA "shall be regarded as performing an essential govern-

mental function" (Public Authorities Law § 1020-p [1]) because of the declared emergency involving the economy, health and safety of the LILCO service area. However, even if we assume that LIPA is involved in proprietary activities, there is, in our view, no additional constitutional impediment. There is no case law authority for the proposition that the constitutional validity of indemnification clauses depends on whether the activity performed by a public corporation is labeled "governmental" or "proprietary". Furthermore, there is no basis in logic to conclude that the type of activities in which a public corporation engages determines, or should determine, whether the State may indemnify its officers and trustees. NY Constitution article VII does not permit extension of credit to public corporations engaged in governmental functions and deny it to those engaged in proprietary capacities. The Constitution flatly prohibits the extension of credit to any public corporation. Therefore, it is clear that the constitutionality of indemnification provisions rests not on the activity in which the public corporation is engaged but on whether the challenged provisions constitute a gift or loan of the State's credit. We find that Public Authorities Law § 1020-bb does not award a gift or loan of credit and, consequently, does not violate article VII of the NY Constitution.

### UNITED STATES CONSTITUTIONAL CHALLENGE

The plaintiffs argue that Public Authorities Law § 1020-bb is invalidated by the Supremacy Clause of the US Constitution which is applicable to the instant case because the exculpation and indemnification provisions conflict with portions of the Securities Act of 1933 (15 USC § 77a *et seq.),* and the Securities Exchange Act of 1934 (15 USC § 78 a *et seq.).* The plaintiffs assert that "many of the contemplated activities of the trustees and officers of LIPA are subject to the Federal securities laws". The plaintiffs premise this theory on the hypothesis that LIPA will have to sell bonds or float other securities in order to finance its acquisition of LILCO, and that such bond offerings will be subject to the Securities Acts of 1933 and 1934.

The plaintiffs further argue that even though the provisions of Public Authorities Law § 1020-bb indemnify LIPA trustees for all acts except "intentional wrongdoing", the statute is in conflict with the 1933 and 1934 Acts which, according to the plaintiffs, invalidate indemnification agreements even for negligent acts. A fair reading of the cases

relied on by the plaintiffs clearly indicates that mere negligence is not sufficient to establish liability under the Federal Acts, and that some kind of "intentional wrongdoing" is required.

As in the State constitutional issue previously discussed, in this Supremacy Clause constitutional challenge, the plaintiffs bear a heavy burden. The United States Supreme Court has stated that State legislation will not be stricken down unless it creates an "irreconcilable conflict" with Federal legislation *(see, Rice v Williams Co.,* 458 US 654, 659). In *Rice,* the Supreme Court held:

"In determining whether the [Securities Acts] pre-empt * * * a state statute, we apply principles similar to those which we employ in considering whether any state statute is pre-empted by a federal statute pursuant to the Supremacy Clause. *As in the typical pre-emption case, the inquiry is whether there exists an irreconcilable conflict between the federal and state regulatory schemes.* The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute * * *

"A party may successfully enjoin the enforcement of a state statute only if the statute on its face irreconcilably conflicts with federal * * * policy" *(Rice v Williams Co., supra,* at 659 [emphasis supplied]; *see also, Matter of Admiral Wine & Liq. Co. v State Liq. Auth.,* 61 NY2d 858, 861).

Assuming that LIPA may, at some point, sell bonds or float securities thereby implicating the provisions of the 1933 and 1934 Acts, in our view, Public Authorities Law § 1020-bb does not facially conflict with these acts. On its face, Public Authorities Law § 1020-bb attempts to do two things. Subdivision (1) of section 1020-bb immunizes the trustees and officers of LIPA from any "personal or civil liability resulting from the exercise, carrying out or advocacy of any of the authority's purposes or powers" unless the conduct constitutes intentional wrongdoing. Subdivisions (2) and (3) of section 1020-bb seek to indemnify the trustees and officers in connection with any and all claims arising out of actions they take as trustees and officers. These sections accomplish this purpose by making the provisions of Public Officers Law §§ 17 and 18 applicable to the LIPA trustees. Both Public Officers Law §§ 17 and 18 deny indemnification to an employee who engages in intentional wrongdoing *(see,* Public Officers Law § 17 [3] [a]; § 18 [4] [b]). Thus, neither Public Authorities Law § 1020-bb nor Public

Officers Law §§ 17 or 18 purport to insulate the LIPA trustees from liability under the 1933 or 1934 Acts which preclude such indemnification only in cases of intentional wrongdoing. Facially, none of the statutory provisions at issue create an irreconcilable conflict with the 1933 or 1934 Acts.

Moreover, any potential conflict is purely hypothetical *(see, Rice v Williams Co., supra).* At the time of the submission of this controversy to this court, LIPA was not engaged in any activity subject to regulation under the 1933 or 1934 Acts. LIPA must determine if the State's power of eminent domain should be exercised or if the acquisition will be accomplished by some type of stock purchase. Although the media have reported offers tendered subsequent to the submission of this case, it remains uncertain as to if and when LIPA will begin to issue securities covered by the 1933 or 1934 Acts. A hypothetical conflict with Federal law is an insufficient basis upon which to invalidate a State law *(see, Rice v Williams Co., supra).*

■ Even if a hostile tender offer by LIPA rendered the alleged conflict between Public Authorities Law § 1020-bb and the Federal Securities Acts more than hypothetical, the 1933 and 1934 Acts do not prohibit the type of indemnification provisions contained in Public Authorities Law § 1020-bb. To begin with, the provisions of the 1933 Act do not apply to LIPA. 15 USC § 77c (a) (2) exempts from coverage under the 1933 Act "[a]ny security issued or guaranteed * * * by any political subdivision of a State". It appears that the only section of the 1933 Act which does not exempt governmental issues is 15 USC § 77q (a) *(see, In re New York City Mun. Sec. Litig.,* 507 F Supp 169, 174-176). Notably, 15 USC § 77q is entitled "Fraudulent interstate transactions". The very title of the statute indicates that fraud or intentional wrongdoing is required to impose liability. Since this is the only section of the 1933 Act applicable to LIPA, there is no conflict with the provisions of Public Authorities Law § 1020-bb which exclude indemnification for acts of intentional wrongdoing. Significantly, the cases relied upon by the plaintiffs in support of their claim that mere negligence is punishable under the Securities Acts involve negligent violations of the 1933 Act *(see, e.g., Basile v Merrill Lynch, Pierce, Fenner & Smith,* 551 F Supp 580, 587, 590), from which coverage political subdivisions, such as LIPA, are exempted. Even the courts that have determined that there is a private right of action under section 17 (a) of the 1933 Act (15 USC § 77q [a]) have done so

only in actions involving allegations of fraud and/or intentional wrongdoing—conduct expressly excluded from the terms of Public Authorities Law § 1020-bb *(see, e.g., Kirshner v United States,* 603 F2d 234, 238, 241, *cert denied sub nom. Goldberg v Kirshner,* 444 US 995).

Nor do we find persuasive the plaintiffs' argument that under the 1934 Act, liability can be premised on behavior which is not intentional. They contend that under the 1934 Act, only actual knowledge or recklessness is required and that this behavior is more akin to negligence than intentional wrongdoing. In *Ernst & Ernst v Hochfelder* (425 US 185), the leading case with regard to the degree of culpability required to sustain liability under the 1934 Act, the Supreme Court stated that section 10 (b) of the 1934 Act (15 USC § 78j [b]) was intended to proscribe knowing or intentional misconduct. The court concluded that "§ 10 (b) was addressed to practices that involve some element of scienter and cannot be read to impose liability for negligent conduct" *(Ernst & Ernst v Hochfelder, supra,* at 201). The court further stated: "When a statute speaks so specifically in terms of manipulation and deception, and of implementing devices and contrivances—the commonly understood terminology of intentional wrongdoing—and when its history reflects no more expansive intent, we are quite unwilling to extend the scope of the statute to negligent conduct" *(Ernst & Ernst v Hochfelder, supra,* at 214).

Other Federal cases which support the principle that the 1934 Act was intended to prohibit indemnification only for intentional wrongdoing include *Globus v Law Research Serv.* (418 F2d 1276, 1288, *cert denied* 397 US 913 [it is contrary to public policy to permit indemnification "where the underwriter has committed a sin graver than ordinary negligence"]); *Arden Way Assocs. v Boesky* (664 F Supp 863, 865 ["the crucial 'relevant fact' in determining whether indemnification for violations of the securities laws is available is 'whether the defendant act(s) with actual knowledge of falsity or reckless disregard for the truth' " quoting from *Odette v Shearson, Hammill & Co.,* 394 F Supp 946, 954, n 9]); *Adalman v Baker, Watts & Co.* (599 F Supp 752, 754 [no indemnity for "actively attempting to defraud plaintiffs or actively engag[ing] in * * * wrongdoing"]); *Cambridge Fund v Abella* (501 F Supp 598, 619 [SD NY 1980] [indemnification prohibited where there is an adjudication of willfulness]); and *McLean v Alexander* (599 F2d 1190, 1198 ["negligence—whether gross, grave or inexcusable—cannot serve as a substitute for scien-

ter" for the purpose of determining liability under section 10 (b) of the Act of 1934]).

Thus, the immunity and indemnification provisions of Public Authorities Law § 1020-bb, which expressly omit acts of "intentional wrongdoing", are unavailable to the trustees and officers of LIPA for violations under section 10 (b) of the 1934 Act and rule 10b-5 (17 CFR 240.10b-5).

To recapitulate, the provisions of Public Authorities Law § 1020-bb do not conflict with either the 1933 Act or the 1934 Act so as to trigger the application of the Supremacy Clause. As to the 1933 Act, as a political subdivision of the State, LIPA is exempt from its provisions. As to section 77q ("Fraudulent interstate transactions") of that statute, only fraudulent conduct is proscribed. Since the indemnification provisions of Public Authorities Law § 1020-bb exclude from their umbrella acts of intentional wrongdoing, there is no conflict. Similarly, because the 1934 Act requires "intentional wrongdoing" in order to impose liability, the indemnification provisions of section 1020-bb do not conflict with that Act. In sum, since Public Authorities Law § 1020-bb does not protect or indemnify LIPA officials from intentional wrongdoing, this statute is not facially incompatible with Federal law and the Supremacy Clause of the United States Constitution is not implicated.

Accordingly, judgment should be directed declaring that Public Authorities Law § 1020-bb does not violate NY Constitution, article VII, § 8, is not in conflict with the Federal Securities Laws of 1933 and 1934 and the Supremacy Clause, and is valid and enforceable.

THOMPSON, J. P., BROWN and SULLIVAN, JJ., concur.

Adjudged that Public Authorities Law § 1020-bb does not violate the New York State Constitution, the Federal Securities Acts of 1933 and 1934, and the Supremacy Clause of the US Constitution; and it is further,

Adjudged that the defendants are awarded one bill of costs.