WILLIAM JAPP AND MARI JAPP, HUSBAND AND WIFE, ET AL., APPELLANTS, V. PAPIO-MISSOURI RIVER NATURAL RESOURCES DISTRICT, A POLITICAL SUBDIVISION OF NEBRASKA, APPELLEE, AND SHADOW LAKE DEVELOPMENT, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, INTERVENOR-APPELLEE.

733 N.W.2d 551

June 22, 2007.   No. S-06-045.

LeRoy W. Sievers, Kevin R. McManaman, and Jocelyn Walsh Golden, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellants.

Paul F. Peters, P.C., L.L.O., of Taylor, Peters & Drews, for appellee.

David L. Welch, of Pansing, Hogan, Ernst & Bachman, L.L.P., for intervenor-appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and CARLSON, Judge.

CONNOLLY, J.

The appellants are resident landowners and taxpayers within the Papio-Missouri River Natural Resources District (District). They object to a development agreement in which the District agreed to provide funds to construct two dams in a private commercial and residential development in Papillion, Sarpy County, Nebraska. The district court denied the appellants' complaint for a declaratory judgment and an injunction. The appellants argue the agreement calls for illegal expenditures that benefit

private developers. This appeal presents two questions: whether the District (1) had statutory authority to enter the agreement and (2) violated article XIII, § 3, of the Nebraska Constitution, which prohibits the state from giving or lending its credit to private parties. We affirm because (1) Neb. Rev. Stat. § 2-3235(1) (Cum. Supp. 2006) gives the District authority to enter contracts with private developers to fulfill its statutory purposes and (2) the District would not give or loan the state's credit under the agreement.

## BACKGROUND

### The Developments

Shadow Lake Development, LLC (SLD), a Nebraska limited liability company, develops real estate. SLD owns land located between 72d and 84th Streets north of Capehart Road in Sarpy County, which is the site of a residential development known as Shadow Lake. SLD formed sanitary and improvement district No. 264 of Sarpy County to construct, operate, and maintain public infrastructure in its development.

Another private developer, 370 LLC, owns the land north of Shadow Lake and south of Nebraska State Highway 370 and has plans for a commercial development for that site known as Shadow Lake Towne Center (Towne Center). Sanitary and improvement district No. 267 of Sarpy County was formed by 370 LLC to construct, operate, and maintain public infrastructure in its development. Midlands Creek, a tributary of the west branch of Papillion Creek, flows through Shadow Lake and Towne Center.

### Water Projects and the Cooperative Agreement

The District and the U.S. Department of Agriculture's Natural Resources Conservation Service, a federal agency involved in water resource projects, had previously planned a grade stabilization structure at the proposed developments. The District also wanted to incorporate flood control into the plan at that location. Marlin J. Petermann, the assistant general manager for the District, testified that increased development in the area had created a greater need for flood control. In addition,

the city of Papillion has required the construction of dams and reservoirs as flood control and grade stabilization structures in the developments.

After negotiations, the District, the city of Papillion, the developers, and the sanitary and improvement districts drafted a "Cooperative Agreement" (Agreement) providing for the construction of the dams and reservoirs. The proposed Agreement requires that SLD and sanitary and improvement district No. 264 build two dams: the Midlands Lake dam at Shadow Lake, and the Shadow Lake dam, which would span both Shadow Lake and Towne Center. The reservoirs created by these dams would be primarily in Shadow Lake.

The Agreement would require the District to contribute to the costs of design, construction, project administration, permits, and project land rights. The District agreed to pay 75 percent of the cost of the Shadow Lake dam and 100 percent of the engineering and construction costs of the Midlands Lake dam, up to a maximum of $3,357,278. The Agreement also required the District to permanently operate and maintain the dams; SLD, 370 LLC, and the sanitary improvement districts would contribute the land rights required for the project and the remaining costs.

Petermann testified that the Shadow Lake project is a multi-purpose project and that its purposes include "[f]lood control, water quality, recreation, [and] sediment/erosion control . . . ." The appellants' expert, an engineer employed by an environmental management consulting firm, opined that the proposed dams could help control erosion and would provide some flood control for the area. The Agreement does not include requirements for recreational facilities, but Petermann stated that the plan includes about 60 acres around the reservoirs that would be accessible to the public. The city of Papillion would determine the specific details about access and facilities.

### THE APPELLANTS OBJECT TO THE AGREEMENT

In May 2005, the appellants learned that the District planned to enter the Agreement to construct the Shadow Lake and Midlands Lake dams. They wrote letters to the District's board of directors (Board) objecting that it would be an illegal expenditure of taxpayer money. They also attended Board meetings to

voice their complaints. Nevertheless, on June 9, the Board voted to authorize the District's general manager to execute the Agreement. On June 10, the appellants sued the District, seeking an injunction and a declaration that the Agreement violates Nebraska's statutes and constitution. They contended that Nebraska law does not permit the District to enter development agreements with private developers.

## ASSIGNMENTS OF ERROR

The appellants assign, restated and consolidated, that the district court erred in (1) finding that the District had statutory authority to enter the development agreement, (2) failing to admit a proposed legislative bill (L.B. 552) into evidence, and (3) finding that the District had constitutional authority to enter the development agreement.

## STANDARD OF REVIEW

■ Concerning questions of law and statutory interpretation, we resolve the issues independently of the lower court's conclusion.[1]

## ANALYSIS

### THE DISTRICT HAS STATUTORY AUTHORITY TO ENTER THE AGREEMENT

The appellants contend that the District lacks statutory authority to enter development agreements with private developers. They argue that § 2-3235 does not allow the District to contract with private developers, either expressly or impliedly.

Regarding the power of a natural resources district (NRD) to contract with outside parties, § 2-3235(1) provides:

Each district shall have the power and authority to cooperate with or to enter into agreements with and, within the limits of appropriations available, to furnish financial or other aid to any cooperator, any agency, governmental or otherwise, or any owner or occupier of lands within the district for the carrying out of projects for benefit of the

[1] See *Gilbert & Martha Hitchcock Found. v. Kountze*, 272 Neb. 251, 720 N.W.2d 31 (2006).

district as authorized by law, subject to such conditions as the board may deem necessary.

An NRD, as a political subdivision, has only that power delegated to it by the Legislature,[2] and we strictly construe a grant of power to a political subdivision.[3] An NRD possesses and can exercise the following powers and no others: (1) those granted in express words; (2) those implied in or incident to the powers expressly granted; and (3) those essential to the declared objects and purposes of the district, not simply convenient, but indispensable.[4]

Neb. Rev. Stat. § 2-3229 (Reissue 1997) lists the purposes of NRD's. Under this section, NRD's may develop and execute plans, facilities, works, and programs relating to

(1) erosion prevention and control, (2) prevention of damages from flood water and sediment, (3) flood prevention and control, (4) soil conservation, (5) water supply for any beneficial uses, (6) development, management, utilization, and conservation of ground water and surface water, (7) pollution control, (8) solid waste disposal and sanitary drainage, (9) drainage improvement and channel rectification, (10) development and management of fish and wildlife habitat, (11) development and management of recreational and park facilities, and (12) forestry and range management.

The record shows that the Shadow Lake and Midlands Lake projects will achieve several of these purposes. Petermann testified that these projects would provide flood control, sediment and erosion control, recreation, and water quality benefits. The appellants acknowledge that regarding these purposes, the

[2] *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996); *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995); *In re Applications A-15145, A-15146, A-15147, and A-15148*, 230 Neb. 580, 433 N.W.2d 161 (1988).

[3] *Metropolitan Utilities Dist. v. Twin Platte NRD, supra* note 2; *Wagoner v. Central Platte Nat. Resources Dist., supra* note 2; *In re Applications A-15145, A-15146, A-15147, and A-15148, supra* note 2.

[4] See, *Metropolitan Utilities Dist. v. Twin Platte NRD, supra* note 2; *Wagoner v. Central Platte Nat. Resources Dist., supra* note 2.

projects are within the District's judgment. Thus, we do not pass on the wisdom of the projects.[5]

But the appellants contend that although the projects fulfill the District's statutory purposes, it could not contract with private developers to accomplish these purposes. They argue that § 2-3235(1) does not include "developers" among the parties with which the District may contract and provide financial aid. And they urge us to consider the historical context in construing this statute, citing *Allen v. Tobin*.[6] Historically, NRD's assisted farmers and rural landowners under § 2-3235(1).

In construing a statute, we will give it its plain and ordinary meaning. And we will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[7] Here, we need not look to history for the meaning of § 2-3235(1) because its language is clear. It applies to any "owner or occupier of lands within the district." An "owner" is "[o]ne who has the right to possess, use, and convey something . . . ."[8] However transient their ownership may be, SLD and 370 LLC are the owners of the project lands. Thus, under § 2-3235(1), the District has express authority to cooperate, enter agreements, and furnish aid to them to carry out projects that benefit the District.

Principled adherence to statutory interpretation need not prevent a court from questioning the policy and breadth of a statute. Reasonable minds may disagree whether it is good policy for NRD's to contract with private developers. That decision, however, is for the Legislature.

### THE DISTRICT COURT PROPERLY EXCLUDED EVIDENCE OF L.B. 552

The appellants offered into evidence L.B. 552, which the District introduced to the Nebraska Legislature in 2005. L.B. 552 would have allowed an NRD encompassing a metropolitan

---

[5] See *Winter v. Lower Elkhorn Nat. Resources Dist.*, 206 Neb. 70, 291 N.W.2d 245 (1980).

[6] *Allen v. Tobin*, 155 Neb. 212, 51 N.W.2d 338 (1952).

[7] *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415 (2006).

[8] Black's Law Dictionary 1137 (8th ed. 2004).

class city to "enter into cost-sharing agreements with land-owners, *developers*, and other cooperators in connection with . . . dam and reservoir projects." (Emphasis supplied.) The Legislature did not pass the bill. The district court excluded the evidence as irrelevant. The appellants argue that L.B. 552 was relevant as an admission by the District that it lacks authority to enter into the Agreement with the private developers. Appellee SLD argues, however, "The only fact LB 552 may have made more probable was that [the District] was concerned that a court may not interpret the Nebraska statutes as expressly granting [the District] authority to enter into agreements" with developers.[9]

In proceedings where the Nebraska Evidence Rules apply, the rules control the admissibility of evidence; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[10] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion.[11] Because the exercise of judicial discretion is implicit in determinations of relevancy, we will not reverse the trial court's decision absent an abuse of discretion.[12] An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[13]

Under Nebraska law, relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[14] Evidence which is not relevant is inadmissible.[15]

---

[9] Brief for appellee SLD at 18.

[10] See *Curran v. Buser*, 271 Neb. 332, 711 N.W.2d 562 (2006).

[11] See *id.*

[12] *Id.*

[13] *Id.*

[14] Neb. Rev. Stat. § 27-401 (Reissue 1995); *Curran v. Buser, supra* note 10.

[15] See Neb. Rev. Stat. § 27-402 (Reissue 1995).

Whether the District believed, or even questioned, that it lacked authority to enter agreements with private developers is not relevant to whether it had such authority under current Nebraska law. The district court did not abuse its discretion in excluding L.B. 552.

### The District Would Not Violate the Nebraska Constitution by Entering the Agreement

The appellants contend that the proposed Agreement between the District and the private developers violates article XIII, § 3, of the Nebraska Constitution. With certain exceptions not applicable here, article XIII, § 3, provides that "[t]he credit of the state shall never be given or loaned in aid of any individual, association, or corporation . . . ." The appellants argue that the Agreement requires the District to extend its credit for the sole benefit of a private entity.

Article XIII, § 3, of the Nebraska Constitution prevents the state or any of its governmental subdivisions from extending the state's credit to private enterprise.[16] It is designed to prohibit the state from acting as a surety or guarantor of the debt of another.[17]

In *Haman v. Marsh*,[18] we addressed the constitutionality of legislation that would have provided state tax money to depositors who suffered losses from failed industrial loan and investment companies. The Legislature passed 1990 Neb. Laws, L.B. 272A, to fulfill the guaranties made to depositors by a private corporation. We stated that a plaintiff must prove three elements: (1) The credit of the state (2) was given or loaned (3) in aid of any individual, association, or corporation.[19] Regarding the first element, "credit of the state," we stated,

---

[16] *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991); *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981); *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956). See, also, *State ex rel. Beck v. City of York*, 164 Neb. 223, 82 N.W.2d 269 (1957).

[17] *Callan v. Balka*, 248 Neb. 469, 536 N.W.2d 47 (1995); *Haman v. Marsh, supra* note 16.

[18] *Haman v. Marsh, supra* note 16.

[19] *Id*. See, also, *Callan v. Balka, supra* note 17.

> The state's credit is inherently the power to levy taxes and involves the obligation of its general fund. . . . There is a distinction between the loaning of state funds and the loaning of the state's credit. When a state loans funds it is in the position of creditor, whereas the state is in the position of debtor upon a loan of credit.[20]

We decided that there was "no question" the legislation in *Haman* unconstitutionally involved the state's credit.[21] L.B. 272A would have obligated the state's general fund to pay off the guaranties of a private corporation.

We have also found an extension of state credit when the state has agreed to obtain property for a private project financed by issuing revenue bonds in its name. In *State ex rel. Beck v. City of York*,[22] we explained that issuance of bonds by the state or a political subdivision gives the bonds greater marketability and value and acts as an inducement to gain financing. Thus, if the bonds are used for a private project, the city has loaned its credit for the benefit of the private party.

In summary, article XIII, § 3, seeks to prevent the state from loaning its credit to an individual, association, or corporation with the concomitant possibility that the state might ultimately pay that entity's obligations. In addressing a similar constitutional provision, the New York Court of Appeals in *Wein v. Levitt*[23] concisely summarized that "[s]ubsidy by loan of credit was the evil sought to be eradicated" by such a prohibition.

Here, the District did not lend or give state credit by agreeing to pay for the Shadow Lake and Midlands Lake dams. The District did not use its credit to secure capital for a private project or agree to act as a guarantor for a private company. Instead, the District agreed to provide funds for a project that

---

[20] *Haman v. Marsh, supra* note 16, 237 Neb. at 719-20, 467 N.W.2d at 850.

[21] *Id.*, 237 Neb. at 720, 467 N.W.2d at 850.

[22] *State ex rel. Beck v. City of York, supra* note 16. Compare *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979).

[23] See *Wein v Levitt*, 42 N.Y.2d 300, 306, 366 N.E.2d 847, 850, 397 N.Y.S.2d 758, 762 (1977).

would carry out its statutory purposes. The appellants contend that the Agreement would cause the District to become a debtor of sanitary and improvement district No. 264 because under the Agreement, the District is obligated to reimburse it for project costs. But this arrangement did not involve the use of the state's credit. The state merely agreed to *expend funds*; it did not pledge its credit as an inducement to gain benefit or provide financial backing for the private developers.[24]

Because the appellants have failed to meet the first prong of the *Haman* test, further analysis is unnecessary.[25] The expenditure did not violate article XIII, § 3, of the Nebraska Constitution.

## CONCLUSION

Section 2-3235(1) expressly permitted the District to enter into the Agreement with private developers to construct the Shadow Lake and Midlands Lake dams. And the proposed L.B. 552 was not relevant evidence to show that the District lacked authority to enter the Agreement. Further, the District did not extend its credit to the private developers by agreeing to pay for the construction of the dams. We affirm.

AFFIRMED.

STEPHAN, J., not participating.

---

[24] See *State ex rel. Beck v. City of York, supra* note 16.

[25] See *Callan v. Balka, supra* note 17.